UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ABOUBAKRY SOW,

                              Plaintiff,          11-CV-6264

                                                  **DECISION**
                    v.                            **and ORDER**

MICHAEL J. ASTRUE, Commissioner
of Social Security

                         Defendant.
_____

### <u>INTRODUCTION</u>

Plaintiff, Aboubakry Sow ("Sow" or "plaintiff"), brings this action pursuant to Title XVI of the Social Security Act ("The Act") seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income benefits ("SSI"). Specifically, the plaintiff alleges that the decision of the Administrative Law Judge ("ALJ"), Joseph Rowe, denying his application for benefits was not supported by substantial evidence in the record and was contrary to the applicable legal standards.

The plaintiff moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and 42 U.S.C. section 405(g), seeking reversal of the Commissioner's decision or, in the alternative, remand of this case to the Social Security Administration ("SSA") for further proceedings. The Commissioner cross-moves for judgment on the pleadings on the grounds that the Commissioner's decision is supported by substantial evidence. For the reasons set forth below, this Court finds that the ALJ's

decision is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Accordingly, I grant the Commissioner's motion for judgment on the pleadings, and the plaintiff's motion is denied. Plaintiff's complaint is dismissed with prejudice.

## BACKGROUND

On May 31, 2007, the plaintiff filed an application for SSI benefits under 42 U.S.C. § 1382 alleging disability due to mycetoma in his right foot, with an onset date of July 1, 1992. Transcript of the Administrative Proceedings at 13, 16 (hereinafter "Tr."). The plaintiff's application was denied at the initial stage and upon reconsideration. The plaintiff timely requested a hearing before an ALJ, and appeared before Judge Joseph K. Rowe with attorney, Mark Palmiere, on October 29, 2009.

In a decision dated January 15, 2010, the ALJ determined that the plaintiff was not disabled. The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied plaintiff's request for review on March 14, 2011. On May 19, 2011, the plaintiff filed this action.

## DISCUSSION

I.  Jurisdiction and Scope of Review

42 U.S.C. section 405(g) grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. Matthews v. Eldridge, 424 U.S. 319, 320 (1976). Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the

Commissioner, provided that such findings are supported by substantial evidence in the record. <u>See</u> <u>Bubnis v. Apfel</u>, 150 F.3d 177, 181 (2d Cir. 1998); <u>see also</u> <u>Williams v. Comm'r of Soc. Sec.</u>, No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938). Section 405(g) thus limits this Court's scope of review to two inquiries: 1) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (2) whether the Commissioner's conclusions are based upon an erroneous legal standard. <u>Green-Younger v. Barnhard</u>, 335 F.3d 99, 105-06 (2d Cir. 2003); <u>see also</u> <u>Wagner v. Secretary of Health & Human Serv.</u>, 906 F.2d 856, 860 (2d Cir. 1990)(holding that review of the Secretary's decision is not <i>de novo</i> and that the Secretary's findings are conclusive if supported by substantial evidence).

The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record and is in accordance with the applicable legal standards, and moves for judgment on the pleadings pursuant to Rule 12(c). Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that plaintiff has not set forth a plausible

claim for relief, judgment on the pleadings may be appropriate. <u>See generally</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007).

II.   <u>Standard for Entitlement to SSI Benefits</u>

The Social Security Act provides that "an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months" 42 U.S.C. § 1382c(a)(3)(A). An individual will only be considered "under a disability" if his impairment is so severe that he is both unable to do his previous work and unable to engage in any other kind of substantial gainful work that exists in the national economy.  42 U.S.C. §1382c(a)(3)(B).

In determining whether or not a claimant is disabled, SSA regulations require the ALJ to perform a five-step sequential evaluation. In doing so, the ALJ must determine:

(1)   Whether the claimant is currently engaged in substantial gainful activity;

(2)   if not, whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities;

(3)   if the claimant suffers a severe impairment, the ALJ considers whether the claimant has an impairment which is listed in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is presumed disabled;

(4)   if not, the ALJ considers whether the impairment prevents the claimant from doing past relevant work;

> (5)   if the claimant's impairments prevent her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodate the claimant's residual functional capacity and vocational factors, the claimant is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v)(2009).

Here, after determining that the plaintiff met the insured status requirements of the Social Security Act, the ALJ performed the required five-step evaluation and determined that: (i) the plaintiff had not engaged in substantial gainful activity since his disability application date of May 31, 2007; (ii) the plaintiff's mycetoma in his right foot is a "severe" impairment under 20 C.F.R. § 416.920(c);(iii) the plaintiff's impairment did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;(iv) the plaintiff has no past relevant work under 20 C.F.R. § 416.965; and (v) the plaintiff retained the residual functional capacity ("RFC") to perform sedentary work.

III. The Commissioner's decision to deny the plaintiff benefits was supported by substantial evidence in the record.

A. Plaintiff's Medical History

In a hearing held on October 21, 2009, plaintiff testified that he immigrated to the United States from Mauritania, a country in West Africa, on August 17, 2006. On December 18, 2006, plaintiff was examined at Strong Memorial Hospital ("Strong") by Dr. Robin Baines for pain and swelling to his right foot. Id. at 169. Dr. Baines ordered an x-ray of plaintiff's right foot which showed sclerotic

and lucent areas in the bone, but no soft tissue abnormality, fracture, or dislocation. Dr. Baines observed that these findings were "consistent with chronic (fungal) infection." A subsequent MRI of his right foot was evaluated by Drs. Monu and Patel at Allergy/Immunology/Rheumatology Clinical Group (a division of Strong) on December 27, 2006. Id. at 148. The findings were consistent with chronic granulomatous infection.

In a report from Strong dated May 23, 2007, plaintiff was evaluated for the mycetoma[1] in his right foot and presented with two treatment options: (1) an antifungal treatment which would attempt to isolate the organism causing the infection or (2) ongoing bony deconstruction in the foot and ankle. In a follow-up appointment on June 29, 2007, Dr. Baines diagnosed plaintiff with mycetoma in his right foot, and suggested a treatment plan once the organism causing the infection was isolated.

Plaintiff saw Dr. Thiele on October 5, 2007. Id. at 220. Dr. Thiele observed that plaintiff had "some difficulty ambulating due to chronic foot condition." On December 4, 2007, plaintiff again followed up with the Allergy/Immunology/Rheumatology Clinical Group ("AIR Clinic") for right foot pain. Id. at 219. Dr. Thiele, a doctor at the AIR Clinic, evaluated plaintiff, and observed that he had difficulty standing for an hour and also that he used a cane for ambulation. As of June 29, 2007, Dr. Thiele had still not isolated the organism causing the mycetoma.

---

[1] Mycetoma: A mass caused by a fungal infection that usually grows in lung cavities. It can also appear in the brain, kidney, or other organs. (Ncbi.nlm.nih.gov/pubmedhealth)

Plaintiff was referred to Dr. Judith Baumhauer at Strong by Dr. Thiele for evaluation and treatment of his foot problems. At a March 14, 2007 appointment, Dr. Baumhauer suggested an excisional biopsy of his foot nodules which she later performed on April 24, 2007.  At a follow up appointment on May 30, 2007, the wounds from the excision were completely healed and there was no change in the neurovascular status of his foot. Id. at 182.

Plaintiff was referred to Dr. Harbinder Toor of Industrial Medicine Associates by the Division of Disability Determination for an orthopedic exam on August 13, 2007. Id. at 195. Dr. Toor observed that plaintiff was in moderate pain in his right foot, and that he walked with a limp towards the right leg. Plaintiff was unable to be on his heels or toes without the use of his cane.  Plaintiff was able to squat 40% of full range both with and without his cane. The cane was necessary for plaintiff to walk or to stand for long periods of time, but he could stand for a few minutes without it.

Except for his right foot, plaintiff received positive reports in all other areas of his examination (full range of motion in his upper extremities, fine motor activity in his hands, no problems with his back or spine). When examining plaintiff's lower extremities, Dr. Toor observed that there was full range of motion in his hips and knees bilaterally, full range of motion in his left ankle, but restrictions in his right ankle. Plaintiff was unable to move his right ankle as the doctor requested because of pain. Dr. Toor stated that his prognosis was "guarded" and opined that he had a "moderate to severe limitation in standing and walking for a

long time...he may need a cane for standing and walking a long time." Id. at 197.

On October 2, 2007, plaintiff had a physical Residual Functional Capacity Assessment completed by Dr. Seok, a consultant for the New York State Office of Temporary and Disability Assistance. Id. at 211. Dr. Seok opined that plaintiff could occasionally lift 10 pounds, that he could frequently carry less than 10 pounds, and that he has unlimited push and/or pull capacity. Plaintiff can stand or walk for at least 2 hours in an 8 hour workday, and can sit for about 6 hours in an 8 hour workday. Plaintiff was limited to occasionally climbing, but had no other postural limitations. Dr. Seok noted that even though plaintiff has a classic mycetoma in his right foot, "he should be able to do at least sedentary [work] at present time." Id. at 213. Dr. Seok further opined that his observations were supported by other evidence in the medical record. Lastly, Dr. Seok noted that plaintiff could fully recover, but a sedentary RFC was most appropriate at that time.

On December 4, 2007, Dr. Thiele referred plaintiff to an infectious disease specialist, however, as of December 4, 2007, the fungal culture was still incomplete. Id.

On January 8, 2008, Dr. Mark Mirabelli, plaintiff's primary care physician, examined plaintiff for back pain and leg pain. Id. at 236. Plaintiff continued to limp and favored his right leg. He had pain bending, but was improving in all other positions. He was

taking Vicodin for his pain. Dr. Mirabelli opined that plaintiff's leg pain was likely a result of his mycetoma.

Plaintiff was treated at the University of Rochester Infectious Diseases Department ("IDD") from December 21, 2007 to August 19, 2009. Id. at 245-280. On his April 18, 2008 appointment, an MRI was taken of his right foot. The IDD attending doctor, Dr. Cassar, saw no significant interval change in the mycetoma when compared to his last MRI from December 2007. On July 22, 2008, Dr. Seok found no substantive change or evolution in plaintiff's condition from his prior examination. Id. at 255. On September 29, 2008, plaintiff reported to Dr. Betts at IDD that his right foot pain and discomfort have stabilized and that plaintiff was continuing with his therapy. During plaintiff's appointment on March 13, 2009, Dr. Betts noted that he had been treating plaintiff for over a year, and at this time "there has been no dramatic improvement in the pt's symptoms, his disease appears to have stabilized and even slightly improved." Id. at 263. On June 15, 2009, Dr. Betts observed, "Pt's latest MRI (March 2009) demonstrated stable disease with, perhaps, marginal improvement." Id. at 264. Dr. Betts noted that "at this point, it appears that pt's prolonged course of therapy with voriconazole was enough to suppress his disease, although not enough to eradicate it." Id. at 265. On plaintiff's last MRI from IDD dated August 19, 2009, Dr. Betts observed that there were no acute osseous abnormalities, and the lesions were the same as on prior examinations. "There had been minimal if any progression of disease involving the mid or hindfoot." Id. at 280.

Plaintiff's Primary Care Physician, Dr. Mirabelli, completed an RFC evaluation dated January 22, 2008. Id. at 226. Dr. Mirabelli stated that plaintiff could occasionally lift 20 pounds, frequently lift less than 10 pounds, and was limited in the push and/or pull in his lower extremities. Plaintiff was also able to stand and/or walk for less than 2 hours in an 8 hour workday (with a hand-held assistive device necessary for ambulation), sit with normal breaks for less than about 6 hours in an 8 hour workday, and be provided a sit/stand option. Plaintiff also is never able to climb, balance, stoop, kneel, crouch, or crawl. Id. at 229. Plaintiff is not limited visually, communicatively, or manipulatively, however, due to his mycetoma, Dr. Mirabelli opined that plaintiff should avoid exposure to extreme temperatures and hazards (machinery, heights, etc.).

B.    The ALJ's Findings

The ALJ determined that the plaintiff had the RFC to perform the full range of sedentary work as defined by 20 C.F.R. 416.967(a). Tr. 15. According to the Social Security regulations, "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

The medical reports from plaintiff's treating and examining doctors state that plaintiff retains the capacity to perform

"sedentary work." See Tr. 196-197, 206, 212-213, 216. Dr. Seok noted in his RFC report that plaintiff could occasionally lift 10 pounds, that he could frequently carry less than 10 pounds, and that he has unlimited push and/or pull capacity. Plaintiff can stand or walk for at least 2 hours in an 8 hour workday, and can sit for about 6 hours in an 8 hour workday. Dr. Seok opined that even though plaintiff has a classic mycetoma in his right foot, "he should be able to do at least sedentary [work] at present time." Additionally, Dr. Toor found that plaintiff was limited in standing or walking for long periods only, which is consistent with sedentary work. Id. at 196-197.

Given both medical opinions and the supporting medical records, the ALJ appropriately determined that the plaintiff retains the ability to perform sedentary work and, therefore, is not disabled within the meaning of the Act.

C.   The ALJ properly determined that it was not necessary to recontact Dr. Mirabelli.

Plaintiff argues that the ALJ should have recontacted the treating physician, Dr. Mirabelli, to obtain additional information because his opinions were "unclear and ambiguous" when evaluated by the ALJ. Pl. Br. 4-9. Also, plaintiff claims that from the ALJ's decision, it appears as though the ALJ has unanswered questions regarding Dr. Mirabelli's opinion. Pl. Br. 6.   (See Tr. at 18.) Accordingly, the plaintiff argues that the ALJ has a duty to seek clarifying information from Dr. Mirabelli on these questions and any unresolved ambiguities.   Plaintiff cites 20 C.F.R. sections

416.912(e) and 404.1516(e) in support of his argument that the ALJ did not fully develop the record by failing to recontact Dr. Mirabelli. However, an ALJ is only required to recontact a medical source when the evidence that has been received from that source is inadequate for the ALJ to determine whether the claimant is disabled. 20 C.F.R. § 404.1512(e). The Second Circuit has also noted that "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999).

Here, the ALJ's finding that plaintiff was not disabled was supported by substantial evidence in the record. During the relevant period, plaintiff was seen by at least 7 physicians for the treatment or examination of his mycetoma. Relying upon medical records, RFC findings, and doctor's observations, ALJ Rowe found that the RFC report of Dr. Toor was entitled to "fairly considerable weight" because his report was based on a thorough examination of the plaintiff and it was consistent with other evidence in the medical record. Tr. 18. The RFC report of Dr. Seok, which found the plaintiff "not disabled" was given some weight because it was not the result of a physical examination of the plaintiff although it was supported by medical evidence in the record. Because of inconsistencies in Dr. Mirabelli's statements and the fact that his RFC report was in opposition to medical evidence contained in the record (including his own findings), the ALJ chose to give his RFC

report "some credit." Id. The ALJ relied on adequate evidence contained in the medical record along with plaintiff's testimony to support his findings and, therefore, he was not required to recontact Dr. Mirabelli.

D.  The ALJ gave appropriate weight to Dr. Mirabelli's medical opinion.

Plaintiff alleges that the ALJ did not give controlling weight to the opinion of his treating physician, Dr. Mirabelli, and incorrectly gave greater weight to the opinions of Drs. Toor and Seok, both consultative physicians. Pl. Mem. Of Law at 9-12.

The regulations provide that the ALJ will "always consider the medical opinions in [the claimant's] case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b). As for the evaluation of documents presented by the plaintiff's treating physician, the ALJ is ordinarily required to:

> give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 416.927 (C)(2).

Further, the regulations provide that "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." Id.

Here, the ALJ correctly gave Dr. Mirabelli's opinion "some credit," but not controlling weight. Tr. 18. In support of his decision, the ALJ refers to a residual functional capacity assessment dated January 22, 2008 in which Dr. Mirabelli did not specify the extent of plaintiff's limitations.  For example, Dr. Mirabelli did not specify whether the plaintiff sit/stand option would be accommodated by regular breaks throughout the day.  Also, Dr. Mirabelli reported to the New York State Office of Temporary Disability Assistance on July 26, 2007, that plaintiff's treating diagnosis was two infections, one of which was Mycetoma of the foot, and explained "I am not the treating physician of either of these diagnosis." Tr. 201.  Moreover, the record reveals that the medical findings of other consulting physicians did not support Dr. Mirabelli's findings.

Dr. Toor, a consultative examiner, found that plaintiff was limited in standing or walking for long periods only, which is consistent with sedentary work, which only requires "walking and standing occasionally." Tr. 18, 197. 20 C.F.R. § 416.967(a). Dr. Toor also observed that plaintiff has a full range of motion in both his extremities, other than his right ankle. Tr. 196-197. Additionally, plaintiff was able to squat to 40% and could change his clothes and get on and off the examination table without assistance. He also had full strength and normal reflexes in his lower extremities, with no atrophy or sensory abnormality. Id. at 197.

The regulations provide that State agency medical consultants are "highly qualified" and "experts in Social Security disability evaluations." 20 C.F.R. § 416.927. Plaintiff also saw Dr. Seok, a state agency medical consultant, who agreed with the findings of Dr. Toor. In his report, Dr. Seok noted that plaintiff can stand and/or walk for at least 2 hours in an 8 hour day. Tr. 212. Also, plaintiff is able to sit for about 6 hours in an 8 hour workday. Id. Both of these observations are consistent with the sedentary work classification from 20 C.F.R. section 416.967(a). Further, Dr. Seok opined that plaintiff was currently capable of sedentary work, and may make complete recovery in the future. Id. at 216.

It is well established that the treating physician's opinion is not deemed controlling when it is contradicted by other substantial evidence in the record. See, Snell v. Apfel, 177 F. 3d 128, 133 (2nd Cir. 1999); Mongeur v. Heckler, 722 F. 2d 1033, 1039 (2d Cir. 1983). Here, the opinion of Dr. Mirabelli with regard to the extent of plaintiff's pain and the effects that it could have on his day-to-day life are contradicted by other competent medical evidence in the record. Accordingly, the ALJ correctly gave his opinions "some credit," but not controlling weight.

E.   The ALJ properly evaluated the jobs existing in the National Economy which plaintiff could perform, and was not required to seek the opinion of a Vocational Expert.

Plaintiff argues that the ALJ did not meet his burden at the fifth step of the sequential evaluation contained in 20 C.F.R. section 404.1520(a)(4)(v), as well as 20 C.F.R. § 416.920(a)(4)(v), which provide that as a part of the disability evaluation process,

the ALJ consider the assessment of a claimant's RFC and a claimant's age, education, and work experience to see if he or she can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v), 20 C.F.R. § 416.920(a)(4)(v).

To help an ALJ in his or her evaluation process, the rules provide for the use of "the Grids" to determine disability status in lieu of having a Vocational Expert. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a).

The Grid rules in Appendix 2 reflect the analysis of various vocational factors (age, education, and prior work experience) in combination with the individual's RFC to evaluate the individual's ability to engage in substantial gainful activity. Id. Where the findings of fact made with respect to a particular individual's vocational factors and RFC coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is disabled or not disabled. Id.

In promulgating the Grids, the Commissioner has taken administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels (sedentary, light, medium, heavy, and very heavy) as supported by the "Dictionary of Occupational Titles" and the "Occupational Outlook Handbook," published by the Department of Labor; the "County Business Patterns" and "Census Surveys" published by the Bureau of the Census; and occupational surveys of light and sedentary jobs prepared for the Social Security Administration by various State employment agencies. 20 C.F.R. Pt. 404, Subpt. P, App. 2,

§ 200.00(b). Thus, when all factors coincide with the criteria of a rule, the existence of such jobs is established. Id.

Because of plaintiff's lack of past relevant work, the ALJ proceeded to the fifth step of the sequential evaluation to determine whether, given the plaintiff's RFC and vocational factors, there was work in the national economy that he could perform. Tr. 18-19. 20 C.F.R. § 416.960, 416.962-965.

Pursuant to these rules, the ALJ considered the plaintiff's vocational factors together with his RFC in determining the plaintiff's ability to engage in substantial gainful activity in other than his vocationally relevant past work.  20 C.F.R. § 404, Subpt. P, App. 2, § 200.00(a).  The ALJ considered that plaintiff is of "younger individual age" because he was between the ages of 19 and 44 during the relevant period. 20 C.F.R. § 404, Subpt. P, App. 2. Based upon the testimony of the plaintiff and his attorney at the hearing, plaintiff speaks English and is able to communicate with others. Tr. 27. Because of this, plaintiff's education would fall into the classification of "Limited or less--at least literate and able to communicate in English." 20 C.F.R. § 404, Subpt. P, App. 2. The ALJ determined that the plaintiff also has no prior relevant work experience. Tr. 18.

Given the above factors, the ALJ appropriately determined that the plaintiff complies with Rule 201.24 of 20 C.F.R. § 404, Subpt. P, App. 2. For an individual in this category, the Grids support the ALJ's finding that plaintiff was "not disabled" and,

further, there exist jobs in the national economy that he can perform given his limitations.

## CONCLUSION

For the reasons set forth above, this Court finds that the ALJ's decision to deny the plaintiff benefits was supported by substantial evidence in the record. Therefore, I grant the Commissioner's motion for judgment on the pleadings. The plaintiff's motion is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**


S/Michael A. Telesca
_____

HONORABLE MICHAEL A. TELESCA
United States District Judge


DATED:    July 24, 2012
          Rochester, New York